## Williams's Appeal.
## Harding's Appeal.

1. A husband may make a gift to his wife of money, chattels or securities by delivery of possession thereof, accompanied by language which indicates an intention to part not only with his possession, but also with his property in the subject of the gift.

2. A., in contemplation of leaving home, purchased an accident insurance ticket, and laid it on a table in front of his wife, saying to her, that "she should take it, and take care of it, and if he got killed before he got back, she would be $3000 (the amount of the policy) better off."

*Held,* That these facts were insufficient to establish a gift of the ticket to A.'s wife, as against creditors of his estate; that in order to establish such a gift, it was necessary to prove that A. intended to part with both the possession of and property in the ticket.

March 20, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, J.J.

CERTIORARI to, and APPEALS from the Orphans' Court of *Wyoming County :* Of January Term, 1884, Nos. 15, 16.

These were appeals by George S. Harding, et al., administrators of the estate of H. P. Hallstead, deceased; and O. H. Williams, et al., creditors of said decedent, from a decree of the said court, sustaining exceptions filed by Maria A. Hallstead, widow of decedent, (and also one of the accountants,) to the report of an auditor appointed to audit the account of the administrators of said decedent, and confirming the said account as filed.

The facts, as they appeared before the auditor, (Charles E. Terry, Esq.,) were as follows :—H. P. Hallstead, the decedent, on July 30, 1879, being about to leave his home in Nicholson, Wyoming county, Pa., upon a railroad journey to New York, purchased an accident insurance policy or ticket, in the following form:—

No. of Agency, 1644.                                   Form A.

## THE TRAVELERS' INSURANCE COMPANY
### OF HARTFORD, CONN.

This ticket insures H. P. Hallstead of Nicholson, by occupation, Agent, in the sum of $3000.00 for the term fixed by the Coupons remaining hereunto attached; beginning with the day and hour as hereon canceled, and is subject to all the provisions of the contract on back hereof.

Not transferable.                    RODNEY DENNIS, Sec'y.

Premium, $0.50.

(The term fixed by the coupons was for two days, from 12 o'clock, midnight, of July 30, 1879.)

[INDORSED ON BACK.]

THE TRAVELERS' INSURANCE COMPANY, of Hartford, Conn., will indemnify the person insured by this Ticket in the sum of Fifteen Dollars per week against loss of time not exceeding twenty-six consecutive weeks from the happening of such accident and injury as shall, independently of all other causes, immediately and wholly disable and prevent him from the prosecution of any and every kind of business by reason of bodily injuries effected during the term of this insurance, through external, violent and accidental means ; or in the event of death occasioned by bodily injuries received as aforesaid, when resulting within ninety days from the happening thereof, and in such event only, will pay the sum of three thousand dollars to the legal representatives of the insured within ninety days after proof of such accident and injury.

Then followed numerous provisions, among which was the following :—" The transfer of this ticket will forfeit all claims arising hereunder, and all the provisions and stipulations aforesaid are conditions precedent to the making of this contract."

On the day of the purchase and before leaving for New York, the following conversation took place between him and his wife, as detailed by one Addie J. Knapp, a witness:—

"I was living at Henry P. Hallstead's in the latter part of July, 1879. I was present on the night of July 30, 1879, when Mr. Weaver brought the insurance ticket to the house. It was about nine o'clock in the evening when he brought it. Mr. Weaver rang the bell and Mr. Hallstead at once went to the door. He then came back from the door with an insurance ticket in his hand. Mrs. Hallstead asked him who was at the door. Mr. Hallstead said George Weaver, and that he had brought an insurance ticket. Mrs. Hallstead was sitting at the table, and Mr. Hallstead laid the ticket on the table right in front of Mrs. Hallstead and said, 'Here is an insurance ticket.' Mrs. Hallstead asked him what he had got that for. He said that she should take it and take care of it, and if he got killed before he got back she would be that much better off. He said three thousand dollars better off. She made a slight remark that a fool and his money was soon parted, and he said it only cost fifty cents."

On Hallstead's arrival in New York, and during the life of the policy, he sustained the bodily injuries of which he subsequently died. Shortly thereafter letters of administration

were granted on his estate to his widow, Maria Hallstead and George S. Harding. On September 6, 1879, an inventory and appraisement was filed at the instance of both of the administrators, which contained an item of $6000 for life insurance, which included the $3000 in question. On November 18, 1879, the insurance company paid the said sum to the administrators, and obtained a receipt therefor, which was signed by both the administrators as administrators. Subsequently various sums were paid out of this fund to Hallstead's creditors, the checks being signed with the name of George S. Harding, "administrator," or, "for the estate of H. P. Hallstead, deceased."

On February 23, 1882, the administrators filed the partial account, which is the subject of the present audit. They did not charge themselves with the sum of $3000 under contention, but in a note to said account, explained their omission so to do by alleging that the ownership of said sum was claimed both by the widow and the creditors of the estate. Exceptions were filed by the latter to the omission, and an auditor appointed as aforesaid, who found as matter of fact that the evidence did not establish a gift of the $3000 by Hallstead to his wife, but that even if it had, as matter of law, her conduct since the death of her husband would estop her from claiming the proceeds of said policy to the exclusion of her husband's creditors. He therefore sustained the exception and re-stated the account by adding to the sum, with which the accountants charged themselves, the additional sum of $3000.

Exceptions filed to this report were sustained by the court, and the account confirmed, INGHAM, P. J., holding in an opinion filed, that the evidence established a gift of the insurance ticket to the wife, and that her conduct subsequent to his death, did not estop her from setting up said gift against her husband's creditors.

O. H. Williams, Solomon Taylor, and George S. Harding thereupon took these appeals, assigning for error the action of the court in sustaining the exceptions and the decree confirming the account.

*John A. Sittser*, and *W. E. & C. A. Little*, for the appellants.

*Steuben Jenkins* and *Garrick M. Harding*, for the appellees.

Chief Justice MERCUR delivered the opinion of the court, May 19, 1884.

These two appeals are from the same decree. They were argued together. The appellants are creditors of the estate

of H. P. Hallstead, deceased. The contention is as to the ownership of a policy or ticket of insurance procured by him, in the Travelers' Insurance Company of Hartford, on his own person. It provided for the payment to him of fifteen dollars per week in case of accidental bodily injuries, or in case of death through such injuries, the sum of three thousand dollars. It was for two days only. During that time he sustained accidental bodily injuries which caused his death. The sum of three thousand dollars was paid to his administrators by the insurance company; but the money is claimed by his widow under an alleged gift of the policy to her by Mr. Hallstead during his life.

It appears that Mr. Hallstead procured this policy just before leaving home to be absent a few days. The only witness relied on to establish the alleged gift is Addie J. Knapp. Just before he started, she testifies, he came from the door with an insurance ticket in his hand. "He laid the ticket on the table right in front of Mrs. Hallstead, and said, here is an insurance ticket. Mrs. Hallstead asked him what he had got that for? He said that she should take it and take care of it, and if he got killed before he got back, she would be that much better off. He said three thousand dollars better off. She made a slight remark that a fool and his money was soon parted, and he said it only cost fifty cents."

Is that evidence sufficient to pass the title to this ticket from the husband to his wife? This policy must not be confounded with one which a husband may procure on his life, and by the terms thereof the money be made payable to his wife on his death. On the contrary the person insured under this policy is expressly prohibited from making any disposition of it. A clause therein declares "the transfer of this ticket will forfeit all claims arising hereunder."

Was then the handing of this non-transferable ticket by the husband to his wife, accompanied by his statement and request as proved, sufficient to divest all his interest therein, and transfer the right of property to her? He did not say that he had procured it for her benefit. When a husband about to leave home with the intention of being absent a few days, hands a paper to his wife and makes the remarks stated, is it reasonable to presume that either of them understood she thereby acquired a right to it adverse to her husband? Unless she then and there acquired such adverse right, the gift was not executed: Linsenbigler v. Gourley, 6 P. F. Smith, 166. If he had sustained such injuries as would have made the company liable to pay $15.00 a week for twenty-six consecutive weeks, did the parties to this transaction understand that the wife could draw that money to the exclusion of her hus-

band? It is very clear the language used justifies no such conclusion.

In arriving at the intention of the parties we must recognize the confidential relations which exist between husband and wife, as well as the fact that in his absence, his valuable papers left at home, depend largely on her care for their protection and security. The fact of leaving the policy in her care, and requesting her to take care of it imposed no unusual duty on a wife. The casual remark that in case of his death she would be $3,000 better off, reasonably interpreted, meant his estate would amount to that much more. It is not denied that a husband may make a valid gift to his wife of money or chattels by delivery of possession and language proving such intention: Crawford's Appeal, 11 P. F. Smith, 52. It should however clearly show an intention to part with both possession and property. Either one alone is not sufficient: Trough's Estate, 25 Id., 115. A careful consideration of this whole transaction fails to convince us that the husband intended to part with his right of property in the policy when he handed it to his wife. His language, fairly interpreted, conveys no such idea. There is no evidence that she understood, when she received it, that she took it otherwise than as his custodian to hold it in his absence. Her possession was his possession. Her subsequent action in regard to the policy clearly shows this to have been her understanding. Soon after the death of her husband letters of administration on his estate were granted to her and one George S. Harding. The auditor found as a fact that the inventory and appraisement filed in the register's office and purporting to have been made at the request of both of said administrators, contained an item for "Life Insurance" for a specific sum which included this accident policy in question. Conceding that act, under the circumstances shown, may not operate as an estoppel so as to bar her right to the proceeds of the policy, if otherwise entitled thereto; yet it is certainly persuasive evidence that she did not then claim it in her own right. This item was not included in the inventory without her knowledge, for her attention was called to it at the time.

We therefore conclude there was no intention to transfer to his wife any right of property in the policy, and the learned judge erred in holding otherwise.

Decrees reversed at the costs of the appellees; the exceptions to the report of the auditor are dismissed, and the account as re-stated by him is confirmed.